IN THE UNITED STATES DISTRICT COURT
FOR THE DISRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| YONNI MATHERIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.  2008/117 |
| ) | |
| MOON RISE SHIPPING CO. S.A., ) | |
| Owner of the vessel M/T Pioneer Sunshine, ) | |
| SOLAR JAPAN CO., LTD., ASAHI ) | |
| MARINE CO., LTD., ASAHI TANKER ) | |
| CO., LTD. and JOHN DOES 1-100, ) | |
| ) | |
| Defendants. ) | |

AMBROSE, Senior District Judge

**OPINION AND ORDER**

This action involves injuries allegedly sustained by Plaintiff as a result of a fall while aboard the vessel M/T Pioneer Sunshine in 2007.  Plaintiff claims that Defendants had actual or constructive knowledge that the chair which broke and resulted in his fall constituted a hazard. Defendants seek summary judgment dismissing the action on the grounds that, under any applicable negligence standard, they neither created nor had knowledge of the allegedly dangerous condition, and therefore cannot be held liable as a matter of law.  For the reasons set forth below, I deny Defendants' motion for summary judgment.

**I.  Legal Standard**

In order to succeed on a motion for summary judgment, a moving party must demonstrate that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

1

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. A fact is material when it might affect the outcome of the suit under the governing law." Scott v. Airtran Airways, Inc., No. 05-1123, 2006 WL 2711654, at *2 (W.D. Pa., 2006); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the party moving for summary judgment will not bear the burden of proof at trial, it may meet its initial burden by showing that the evidence on record would not be sufficient for a reasonable jury to find in the non-movant's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Once the party moving for summary judgment has carried the initial burden . . . , the nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact. Instead, it must 'make a showing sufficient to establish the existence of every element essential to its case . . . .'" Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (quoting Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992)). "A nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." Williams v. Borough of West Chester, Pa, 891 F.2d 458, 459 (3d Cir. 1989). "Thus an opponent may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993). Rule 56 requires the granting of a motion for summary judgment after adequate time for discovery against the party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Scott, 2006 WL 2711654, at *1 (quoting Celotex, 477 U.S. at 322).

**II. Statement of Relevant Facts[1]**

Defendant Moon Rise Shipping Co. ("Moon Rise") was the owner of the vessel the m/v Pioneer Sunshine (the "Pioneer"), including its furniture, desks and chairs (Docket No. 110-5, at 7), on January 28, 2007. The vessel was delivered from the ship builders sometime in September 2004. On January 28, 2007, Defendant Asahi Tanker Co., Ltd. ("Asahi Tanker") was the first time charterer of the Pioneer. Defendant Solar Japan Co., Ltd. ("Solar Japan") was the manager of the Pioneer, and was responsible for the running of the ship, providing spare parts, maintenance, crew and other necessities. (Docket No. 110-4, at 2; Docket No. 110-5, at 5; Docket No. 120-6, at .) On October 1, 2008, Defendant Asahi Marine Co., Ltd. ("Asahi Marine") merged with Solar Japan, Solar Japan ceased to exist, and Asahi Marine became the manager of the Pioneer. (Docket No. 110-1, at 2.) Beginning November 12, 2006, Captain Jakic was the captain of the Pioneer.

Captain Jakic boarded and took command of the Pioneer in Inchon, South Korea. It was his first time on the ship. (Docket No. 110-5, at 10.) Mr. Randolph Santos boarded the Pioneer sometime in October 2006 and was employed as the Pioneer's chief officer. According to the crew list as of January 2007, the crew member who had been on board the Pioneer the longest boarded on April 17, 2006. (Id. at 38; Docket 110-6.) As of the time of discovery in this action, few if any of the crew from January 2007 were still employed aboard the Pioneer. (Docket No. 110-5, at 41.)

Plaintiff Yonni Mathurin ("Mathurin") is a resident of St. Croix, United States Virgin Islands, and on January 28, 2007 was employed as a dock attendant for HOVENSA. On January

---

[1] Unless otherwise indicated, all facts have been agreed to by the parties in connection with this motion. [See Docket Nos. 73, 81.] To the extent that I have considered additional facts contained in the record, I have included citations to the record.

28, 2007, in furtherance of his duties as a dock attendant (loading master) for HOVENSA, Mathurin boarded the Pioneer to attend a key meeting. At the key meeting, operational and safety aspects of the loading of the cargo are discussed with the Captain, chief officer and dock operator. The meeting took place in the ship's cargo control room (CCR), also referred to as the cargo oil control room (COC). In attendance at the meeting were Captain Jakic, Chief Officer Santos, Truman Hagbloom, Ivo James and Mathurin.

      The CCR on the Pioneer is a room that is used often by the Captain and his officers to conduct meetings and other operations. Prior to January 2007, Captain Jakic had been in the room almost daily, and participated in more than a dozen meetings in the room. The CCR also serves as the chief officer's office and is similarly used by him for meetings with the crew on a daily basis. The chair at issue had been located in the CCR during this entire period and had been utilized, together with the other furnishings in the room, during the discharge of the Captain's, chief officer's and crew's daily responsibilities.

      Captain Jakic testified that no records of repairs to furniture are maintained. (Docket No. 110-5, at 42.) No inspections are conducted with respect to the furnishings. (Id. at 44.) He received no report of any problems or defects from Moon Rise with respect to the condition of any furnishings aboard the Pioneer. (Id. at 56.) Neither he nor any of his crew observed any weakness in the chair's legs prior to January 28, 2007. (Id. at 74, 110-11, 114.) Captain Jakic personally was not aware of any repairs made to furniture on the Pioneer. (Id. at 42, 74.)

      Near the end or at the conclusion of the key meeting, the left front leg of the chair upon which Mathurin had been sitting broke and the chair collapsed, causing Mathurin to fall to the

4

floor.[2] A shore medic was called and Mathurin was removed from the Pioneer on a stretcher. (Docket No. 110-11, at 1.)

After the accident, Captain Jakic personally inspected the chairs in the CCR, including the one upon which Matherin had been sitting. (Docket No. 110-5, at 49.) All of the chairs appeared to have been rewelded at the joints with the legs. (Id.) This was also true of the majority of chairs in the mess room and smoke room. (Id.) In addition, some of the chairs had cross-wise reinforcement bars connected to the legs. (Id. at 52-53.) Captain Jakic wrote an accident report, explaining that the "[m]ost probable cause for above accident is weak chair's leg." (Docket No. 110-12, at 1.) The Captain stated as immediate corrective action that "[c]rew and visitors exercise caution while using chairs. . . ." (Id.). He further proposed as corrective action that "[a]ll chairs originating from shipyard are obviously of very low quality, since each of them has been repaired due to braking (sic) in past. All such chairs to be replaced with stronger and better quality." (Id. at 2.) At his deposition, Captain Jakic testified that his statement regarding the weak legs was based on the accident having occurred, and not on an observation or report prior to the date of the accident. (Docket No. 110-5, at 68.) He has no knowledge of when or why the reinforcement bars were added to some of the chairs. (Id. at 53.)

---

[2] The parties dispute both whether the meeting had concluded at the time of the accident and whether Mathurin was sitting in the chair or in the process of getting out of the chair.

**III. Defendants' Motion for Summary Judgment**

    **A.  Defendants Asahi Marine, Asahi Tanker and Solar Japan**

Defendants argue that, while Asahi Tanker is currently the parent company of Asahi Marine, on January 28, 2007, when the accident occurred, Asahi Marine had no involvement with the Pioneer.  (Docket No. 109 at 2.)  Asahi Marine had no involvement with the Pioneer until it merged with Solar Japan as of October 1, 2008.  (Id. at 2 n.1.)  At that time, Solar Japan ceased to exist.

This argument, without any citations to the record, is insufficient to meet Defendants burden on summary judgment.   The record reflects that these entities were the charterer and manager of the Pioneer, which facially may provide a basis for liability.  (Docket No. 110-5, at 5, 7; Docket No. 110-4, at 2, Docket No. 110-1, at 2.)  The record before me contains no evidence from which I could determine the continuing responsibilities of Solar Japan and Asahi Marine after their merger.  Nor does the record develop the role of Asahi Tanker with respect to Pioneer.  Defendants' conclusory statements to the contrary do not warrant summary judgment on their behalf.

    **B.  Defendants' Liability For Negligence**

Plaintiff alleges in his Complaint that his "action for negligence against Defendants is based on Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §901 *et seq*.  (Docket No. 109-1, at ¶13.)  Section 905(b) provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.  If such person was employed by the vessel to

> provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . .The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness of a breach thereof at the time the injury occurred.  The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. §905(b).  The Supreme Court has identified three separate duties which arise under section 905(b):  (1) a turnover duty; (2) an active control duty; and (3) a duty to intervene. Scindia Steam Navigation Col. V. De Los Santos, 451 U.S. 156, 167, 175-79 (1981). "[D]etermining that [Plaintiff] could prevail on any theory will be enough to overcome the summary judgment against him."  Serbin v. Bora Corp., Ltd., 96 F.3d 66, 71 (3d Cir. 1996).

In addition, in applying these duties, the Third Circuit has been guided by the principles of the Restatement (Second) of Torts.  See**,** e.g., Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 541-42 (3d Cir. 1994).  Section 343, known as the "safe workplace doctrine," provides that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a)  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Bearing these principles in mind, I will now address Defendants' liability to Plaintiff under the three *Scindia* duties.

### 1. The Turnover Duty

The Supreme Court has explained that the turnover duty provides that:

> [a] vessel must exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert

> and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property. A corollary to the turnover duty requires the vessel to warn the stevedore of *any hazards on the ship or with respect to its equipment, so long as the hazards are known to the vessel or should be known to it in the exercise of reasonable care,* and would likely be encountered by the stevedore in the course of his cargo operations, are not known by the stevedore, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98-99 (1994) (internal quotations and citations omitted) (emphasis added). The turnover duty applies at the moment the vessel initially turns control of the ship over to the stevedore. Kirsch v. Plovidba, 971 F.2d 1026, 1029 (3d Cir. 1992).

The parties dispute whether or not turnover had occurred at the time of the accident. Accordingly, this issue is for the jury to determine. Serbin v. Bora Corp., Ltd., 96 F.3d 66, 71 (3d Cir. 1996) (disputed issues of material fact precluded summary judgment on issue of which duty applied).

Assuming for purposes of this motion that a jury will find that turnover had occurred at the time of the accident, Defendants argue that they nevertheless cannot be held liable because there were no hazards which were known or which could have been known to the vessel in the exercise of reasonable care. (Docket No. 109 at 12-13.) Defendants rely on the deposition testimony of Plaintiff's expert, R. Craig Jerner ("Jerner"), that the secondary weld on the left front leg of the chair had nothing to do with the leg's fracture, and that the existence of secondary weld material would offer no clue as to any weakness in the chairs legs. (Id. at 13-14.) Defendants also rely on the deposition testimony of Jacik to demonstrate that he and his crew

inspected the Pioneer's furnishings, that no reports of any defects in the chairs existed, and that the chairs had been used daily for two and a half months prior to the accident.

I disagree that the evidence relied upon by Defendants is sufficient to demonstrate that they did not know or could not have known that the Pioneer's chairs represented a hazard. With respect to Jerner's testimony, an accurate reading of the pages referred to by Defendants does not support their characterization of his testimony. While Jerner does testify that the attractiveness of the secondary weld does not implicate the strength of the weld, he also testifies that the secondary weld on the *right rear leg*, discussed in paragraph 12 of his opinion, does not implicate the cause of the failure of the left front leg. (Docket No. 109-11, at 3-4.)

For purposes of Defendants' potential liability herein, Jerner opines that, at some point in the past, the right rear leg of the chair at issue had cracked, and that a decision was made to reweld that leg, as well as all the legs of the other chairs. In addition, some of the chair legs were provided with additional support in the form of cross-bars. The welding was done by person with very poor welding skills. The remaining legs on the chair at issue demonstrated cracking at the site of the secondary welds, as well as a lack of fusion. Further, Captain Jakic testified that no records of repairs to furniture are maintained and that no inspections are conducted with respect to the furnishings.

Given this evidence, a reasonable jury could determine that, at some undetermined point in the past, Defendants were made aware of problems with the chairs and ordered that secondary welds be made to the chair legs, and that, concurrent or subsequent to that time, additional cross bar support be applied to some of the chairs. Defendants may have permitted this work to be done in a negligent manner. While the cracking of the right rear leg may not have caused the failure of the left front leg, it nevertheless constitutes evidence of a hazardous condition. See

9

Serbin, 96 F.3d at 72 (fact finder could reasonably conclude that the crew should have recognized the general danger [the chair] posed). The fact that Defendants failed to maintain any records of this activity, and failed to produce witnesses demonstrating why or when these secondary welds occurred, should not be held against Plaintiff on summary judgment. I find that an issue of fact exists as to whether or not Defendants knew or should have known of a hazardous condition on the Pioneer, which resulted in the injury to Plaintiff.

### 2. Active Control Duty

In Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 540 (3d Cir. 1994), the Third Circuit held that "to trigger the active operations duty, the vessel must have substantially controlled or been in charge of (i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, or (iii) the specific activities the stevedore undertook." Here, a jury could find that the crew never turned exclusive control over the CCR room or the chairs to the stevedore. Id. at 541. "Adapting general land-based concepts of negligence to the maritime context, we hold that the four elements of a prima facie case of breach of the active operations duty by a longshore worker against a vessel are: (1) that the vessel appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated, the condition; (2) that the vessel knew, or should have known, that the condition posed an unreasonable risk of harm to the longshore worker; (3) that a longshore worker foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of harm, or (ii) protect himself or herself against the danger; and (4) that the vessel failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition." Id.

The record before me suffices to create triable issues of fact as to whether Defendants breached the active operations duty. First, a jury could conclude that the extensive repairs to the

chairs, including the chair which broke under Plaintiff, should have been appreciated by the Defendants. For example, Plaintiff's experts have testified that Defendants had a duty to inspect and insure the safety of the furnishings on the Pioneer (Docket No. 119-1), that the chair had been rewelded, and that cracking was apparent in the rewelding material. The crew regularly had access to the underside of the chairs while connecting them to the ship for heavy surf. (Docket No. 109-10, at 11-12.) Captain Jakic testified that inspections of the chair were not conducted by him or his crew prior to the accident. In addition, need for additional reinforcement in some of the chairs was evidenced by the crossbars. Accordingly, I find that a triable issue of fact exists as to whether Defendants breached the active control duty.

### 3. Duty to Intervene

The duty to intervene arises where the vessel has actual knowledge of a dangerous condition and reason to believe that the stevedore will not remedy it. Goldsmith v. Swan Reefer A.S., 2006 WL 887745, at *2 (3d Cir. 2006). While the record reflects that Captain Jakic did not have actual knowledge of a dangerous condition presented by the chairs, the condition of the chairs and prior remedial measures taken by the vessel with respect to the chairs, along with Plaintiff's expert's testimony, raises an issue of fact as to whether Defendants had actual knowledge that the chairs constituted a dangerous condition. Accordingly, I deny summary judgment with respect to the duty to intervene.

### 4. Doctrine of Res Ipsa Loquitur

Plaintiff also seeks to proceed under a theory of *res ipsa loquitur*. At least one federal court has applied this doctrine to claims for negligence brought pursuant to the LHWCA. See In re Madeleine Schiffahrtsgesllchaft MBH & Co., 2009 WL 3296668, at *7 (S.D. Fl. June 8, 2009). The doctrine permits a plaintiff to prove negligence through circumstantial evidence and

11

applies if "(1) the injured party was without fault; (2) the instrumentality causing the injury was under the exclusive control of the defendant; and (3) the mishap is of the type that ordinarily does not occur in the absence of negligence." Id. Apart from a conclusory statement that the doctrine does not apply, Defendants have not addressed this argument in any manner.

The record, at a minimum, raises an issue of fact with respect to Defendants' liability under the doctrine. While Defendants argue that Plaintiff's weight exceeded the three hundred pound maximum for the chair, Plaintiff denies that he weighed three hundred pounds, and there was no evidence in the record as to the actual weight capacity of the chair at issue. There is no dispute that the chair was in the exclusive control of the Defendant, and a jury could determine that the mishap is the type that ordinarily does not occur in the absence of negligence. Accordingly, I deny summary judgment dismissing liability on the basis of *res ipsa loquitur*.

## CONCLUSION

The Defendants' motion for summary judgment is DENIED.

## ORDER OF THE COURT

AND NOW, this 5th day of January, 2012, after careful consideration, and for the reasons set forth in the accompanying Opinion, Defendants' motion for summary judgment [Docket No. 108] is DENIED.

A pretrial/settlement conference shall be held on January 24, 2012 at 12:00 pm in Courtroom 2 of the District Court of the Virgin Islands.

BY THE COURT:

/s/<u>Donetta W. Ambrose</u>
Donetta W. Ambrose
Senior U.S. District Judge
